| | |
|---|---|
| **JOEL ABDULLAH, individually and on behalf of all others similarly situated,** | |
| *Plaintiff,* | |
| **v.** | Case No.: _____ |
| **MILO'S POULTRY FARMS, LLC.,** | CLASS ACTION COMPLAINT |
| *Defendant.* | **JURY TRIAL DEMANDED** |

Plaintiff Joel Abdullah ("Plaintiff") brings this Class Action Complaint against Defendant, Milo's Poultry Farms, LLC ("Defendant") individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this class action lawsuit on behalf of himself, and all others similarly situated who purchased all carton sizes and all egg types labeled with "Milo's Poultry Farms" (recall covers all expiration dates), all carton sizes of "Tony's Fresh Market" branded eggs, (recall covers all expiration dates) and all cases of eggs for retail foodservice distribution, (recall covers all expiration dates) (collectively herein "the Products") because these eggs were contaminated with Salmonella[1].

---

[1] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/milos-poultry-farms-llc-recalls-eggs-because-possible-health-risk (last accessed on October 17, 2024)

2.     Unfortunately, the Products are unfit for their intended consumption because they are contaminated with the harmful bacteria, Salmonella.

3.     On September 6, 2024, Defendant made the recall announcement due to the potential of the eggs they produce to be contaminated with Salmonella. The FDA initiated the recall after some enviornmental samples tested positive for Salmonella.

4.     The Center for Disease Control (CDC) has stated that exposure to the bacteria Salmonella can cause an illness called salmonellosis[2]. The Salmonella bacteria is considered the "leading cause of foodborne illness, hospitalizations, and deaths in the United States and worldwide"[3].

5.      The Salmonella bacteria is most likely to sicken: Children who are younger than 5 years (and especially children who are younger than 1 year); Adults who are 50 years and older with underlying medical problems, such as heart disease; Adults who are 65 and older; People who have a weakened immune system; and International travelers.[4]

6.     Salmonella symptoms include watery diarrhea that might have blood or mucus (mucus is thick fluid produced by some parts of the body, including the nose, lungs, and intestines. It may be slippery, slimy, or jelly-like); Stomach cramps that can be severe; Headache; Nausea; Vomiting; and Loss of appetite. [5]

7.     Symptoms usually start 6 hours to 6 days after infection and usually last 4 to 7 days.[6]

---

[2] https://www.cdc.gov/salmonella/about/index.html (last accessed on October 17, 2024)
[3] *Id.*
[4] *Id.*
[5] https://www.cdc.gov/salmonella/signs-symptoms/index.html (last accessed on October 17, 2024)
[6] Id.

2

8.  The Products are manufactured, advertised, sold, and distributed by Defendant or its agents, to consumers, including Plaintiff, across the United States.

9.  Each of the products was manufactured by Defendant, distributed to other corporations and then sold to consumers across the United States.

10.  Through marketing and sale, Defendant represented that the Products are safe for people, including pregnant women and their newborns, adults aged 50, 65 or older, and people with weakened immune systems.

11.  Plaintiff and consumers do not know, and did not have a reason to know, that the Products purchased were contaminated with Salmonella. Consumers expect the food they purchase to be safe for consumption and not contaminated by a harmful bacterium, which can cause a serious infection.

12.  Other manufacturers produce, and sell non-harmful eggs, which is evidence that the risk inherent with Defendant's Products is demonstrably avoidable.

13.  Feasible alternative formulations, designs, and materials are currently available and were available to Defendant at the time the Products were formulated, designed, and manufactured.

14.  At the time of their purchases, Defendant didn't notify Plaintiff, and similarly situated consumers, of the Product's risk of Salmonella through the product labels, instructions, ingredients list, other packaging, advertising, or in any other manner, in violation of state and federal laws.

15.  Plaintiff purchased the Products, while lacking the knowledge that Products could infect those who consumed the products, thus causing serious harm to those who use such Products.

3

16.     Because Plaintiff and all consumers purchased the worthless and dangerous Products, which they purchased under the presumption that the Products were safe, they have suffered losses.

17.     As a result of the above losses, Plaintiff seeks damages and equitable remedies.

## PARTIES

18.     Plaintiff Joel Abdullah is a resident and citizen of Charleston, South Carolina.

19.     Defendant Milo's Poultry Farm, LLC is incorporated, and its principal place of business is Bonduel, Wisconsin. Defendant is a company that operates the production of multiple poultry related brands. Two of these brands are "Milo's Poultry Farm" and "Tony's Fresh Market." These two brands are both found in the northern Midwest region of the United States. Among the products they release to local groceries are various lines of eggs.

20.     Upon information and belief, the planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the Products, and the claims alleged herein was primarily carried out at Defendant's headquarters and facilities within Bonduel, Wisconsin.

## JURISDICTION AND VENUE

21.     This Court has subject jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Member, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states.

22.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

23.     This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself to the laws, rights, and benefits of the State of Wisconsin. Defendants are incorporated in Wisconsin and engaged in activities including (i) directly and/or through its parent companies, affiliates and/or agents providing services throughout (ii) conducting substantial business in this forum; and/or (iii) engaging in other persistent courses of conduct and/or deriving substantial revenue from services provided in Wisconsin and in this judicial District.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a)(1) because many Class Members reside in the state of South Carolina. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## FACTUAL ALLEGATIONS

25.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set.

26.     Plaintiff Joel Abdullah bought Milo's Poultry Farm's eggs back on September 2, 2024 for personal household consumption, near his residence in Charleston, South Carolina.

27.     Nowhere on the Products' packaging or webpage did Defendant disclose that the Products could present a risk of Salmonella contamination.

28.     If Plaintiff had been aware of the Salmonella contamination in the Products, he would not have purchased the Products or would have paid significantly less.

29.     As a result of Defendant's actions, Plaintiff has incurred damages.

30.     If the Products and packaging were reformulated to be safe and avoid risk of bacterial contamination due to Salmonella, Plaintiff would consider purchasing the Products again in the future.

31.     On September 6, 2024, Defendant made the recall announcement due to the potential of the eggs they produce to be contaminated with Salmonella.

32.     The products subject to recall were distributed to retail locations nationwide. Sixty-five (65) people across nine states have been sickened and twenty-four (24) have been hospitalized due to salmonella infections. [7]

33.     So far, most of the salmonella cases linked to the recall have been recorded in Wisconsin. In total, nine states have reported illnesses linked to the recall: California, Colorado, Iowa, Illinois, Michigan, Minnesota, Utah, Virginia & Wisconsin. [8]

34.     Salmonella can cause Salmonellosis, an intestinal infection caused by salmonella bacteria and the symptoms related to the infection are Diarrhea, Stomach cramps, Fever, Nausea, Vomiting, Headache, Chills & Blood in stool. [9]

35.     Defendant is a well-established company that operates the production of multiple poultry related brands.

## **THE PRODUCTS**

36.     The products at hand are carton sizes and all egg types labeled with "Milo's Poultry Farms." (recall covers all expiration dates), all carton sizes of "Tony's Fresh Market" branded eggs, (recall covers all expiration dates) and all cases of eggs for retail foodservice distribution, (recall covers all expiration dates).

37.     Unfortunately, the Products have a risk of a contamination of the bacteria Salmonella.

38.     In more detail, some of these Products are eggs, as seen below:

---

[7] https://www.today.com/health/recall/fda-egg-recall-salmonella-rcna174269 (last accessed on October 17, 2024)
[8] *Id.*
[9] *Id.*





Case 1:24-cv-01400-BBC     Filed 10/31/24     Page 7 of 27     Document 1



## DEFENDANT'S MISREPRESENTATIONS AND OMISSIONS ARE ACTIONABLE

39.     Plaintiff bargained for eggs that were safe to consume. Defendant's Products were, and still are, unsafe to consume due to the risk of Salmonella contamination.

40.     Nowhere in the packaging of the Products did Defendant disclose that the products could contaminate the consumers with Salmonella and cause Salmonellosis.

41.     No reasonable consumer would expect the Products, different types of eggs, to be contaminated with Salmonella. Accordingly, Plaintiff and similarly situated consumers were injured as a result of purchasing the Products, including, among other things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by Defendant; and they were deprived of the benefit of their bargain; and they spent money on a product that did not have any value or had less value than warranted or that they would not have purchased and consumed had they known the truth about the products.

8

42.     Additionally, because the facts concern a safety-related deficiency in the Products, Defendant was under a continuous duty to disclose to Plaintiff and consumers the true nature of the Product and to disclose the Product was contaminated with Salmonella.     Furthermore, Defendant, as the owner, manufacturer, marketer, and seller, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the composition of the Product.

43.     Plaintiff seeks to recover damages because the Products are adulterated, worthless, and unfit for safe human consumption due to the bacteria contained within the Products.

44.     Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the risk of Salmonella contamination affecting the Products.

### CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this case as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and or 23(c)(4), individually, and as the Class representatives on behalf of the following:

**Nationwide Class:** All persons within the United States who purchased the recalled "Milo's Poultry Farms." (recall covers all expiration dates) branded eggs, all carton sizes of "Tony's Fresh Market" branded eggs, (recall covers all expiration dates) and all cases of eggs for retail foodservice distribution, (recall covers all expiration dates).

**South Carolina Subclass:** All persons within the state of South Carolina who purchased the recalled "Milo's Poultry Farms." (recall covers all expiration dates) branded eggs, all carton sizes of "Tony's Fresh Market" branded eggs, (recall covers all expiration dates) and all cases of eggs for retail foodservice distribution, (recall covers all expiration dates).

**Wisconsin Subclass:** All persons within the state of Wisconsin who purchased the recalled "Milo's Poultry Farms." (recall covers all expiration dates) branded eggs, all carton sizes of "Tony's Fresh Market" branded eggs, (recall covers all expiration dates) and all cases of eggs for retail foodservice distribution, (recall covers all expiration dates).

46.     The Nationwide Class, Wisconsin Subclass, South Carolina Subclass shall collectively be referred to herein as the "Classes."

47.     Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

48.     Excluded from the Classes are governmental entities, Defendant, its officers, directors, affiliates, legal representatives, and employees.

49.     This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

50.     **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). The Classes numbers at least in the thousands of persons. As a result, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

51.     **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to the Classes that predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

   a.   Whether Defendant negligently failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution, and/or sale the Products;

   b.   Whether Defendant sold the contaminated Products, that were unreasonably dangerous to consumers such as Plaintiff and members of the Classes;

   c.   Whether Defendant failed to adequately warn Plaintiff and the Classes of the dangers with respect to the contaminated Products;

10

d. Whether Defendant was negligent for failure to warn;

e. Whether Plaintiff and the Classes suffered Damages as a result of the contaminated Products;

f. Whether Defendant was negligent for failure to test;

g. Whether Defendant's advertising, merchandising, and promotional materials directed to Plaintiff were deceptive regarding the risks posed by Defendant's Products;

h. Whether Defendant made representations regarding the safety of the Products;

i. Whether Defendant omitted material information regarding the safety of the Products;

j. Whether Defendant's Products were merchantable;

k. Whether Defendant violated the consumer protection statutes invoked herein;

l. Whether Defendant's conduct alleged herein was fraudulent; and

m. Whether Defendant was unjustly enriched by sales of the Products.

52.     The questions set forth above predominate over any questions affecting only individual persons concerning sales of Defendant's Products throughout the United States and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to the other available methods for the fair and efficient adjudication of Plaintiffs' claims.

53.     **Typicality** – Federal Rule of Civil Procedure 23(a)(3). Plaintiff's claims are typical of those of the Classes in that the Class members uniformly purchased Defendant's Products and were subjected to Defendant's uniform merchandising materials and representations at the time of purchase.

54.     **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate incompatible standards of conduct for Defendant, and/or substantially impair or impede

the ability of Class members to protect their interests. In addition, it would be impracticable and undesirable for each member of the Classes who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

55. **Adequacy** – Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives of the Classes because they are members of the Classes, and their interests do not conflict with the interests of the Classes that they seek to represent. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and undersigned counsel.

56. **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1). Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

57. **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class Members as described below, with respect to the members of the Classes as a whole. Plaintiff seeks to certify Classes to enjoin Defendant from selling or otherwise distributing the Products as

12

labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised benefits and are otherwise safe to use as intended

58.     Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

a.  The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendant;

b.  The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.  Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

### CAUSES OF ACTION

### COUNT I
**Unjust Enrichment**
**(On behalf of the Nationwide Class and, alternatively, the Subclasses)**

59.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

60.     Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's defective and worthless Products. These monies were not gifts or donations but were given in exchange for the Products.

13

61.     Defendant voluntarily accepted and retained these benefits.

62.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for Products unfit for human consumption, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

63.     Defendant received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiff, and the other members of the Classes, because Plaintiff, and members of the Classes, purchased mislabeled products that were not what Plaintiff and the Classes bargained for and were not safe and effective, as claimed.

64.     Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiffs and the other members of the Classes. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff, and members of the Classes, because they would have not purchased the Products had they known the true facts.

65.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Nationwide Class for its unjust enrichment, as ordered by the Court.

## COUNT II
### Breach of Express Warranty
### (On behalf of the Nationwide Class and, alternatively, the Subclasses)

66.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

67.     Plaintiff, and each member of the Classes, formed a contract with Defendant at the time they purchased the Products.

14

68. The terms of the contract include the promises and affirmations of fact, that the products were safe to consume, made by Defendant on the Products' packaging and through marketing and advertising.

69. This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Classes and Defendant.

70. As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Products are safe to consume by people of all ages and genders.

71. Plaintiff and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

72. Defendant breached express warranties relating to the Products and their qualities because Defendant's Products possessed the capability to contaminate the consumers with Salmonella at the time of purchase and the Products do not conform to Defendant's affirmations and promises described above.

73. Plaintiff and each of the members of the Classes would not have purchased the Products had they known the true nature of the risk of the Products contaminating those who consumed the Products.

74. As a result of Defendant's breach of warranty, Plaintiff and each Class Member suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT III
## Breach of Implied Warranty
### (On behalf of the Nationwide Class and, alternatively, the Subclasses)

75.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

76.     Defendant is engaged in the business of manufacturing, constructing, making, selling, distributing, labeling, advertising, retailing, and/or otherwise placing the Product into the stream of commerce.

77.     The Products are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Products, as goods, were purchased.

78.     Defendant's warranty expressly applies to the purchaser of the Products, creating privity between Defendant and Plaintiff and Class Members.

79.     However, privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and its sale through retailers. Defendant's retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

80.     Defendant has been provided sufficient notice of its breaches of implied warranties associated with the Products. Defendant was put on constructive notice of its breach through its review of consumer complaints and other reports.

81.     Had Plaintiff, Class Members, and the consuming public known that the Products could contaminate them and cause harm, they would not have purchased the Products or would have paid less for them.

82.     As a direct and proximate result of the foregoing, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT IV
### Breach of Implied Warranty of Merchantability
### (On behalf of the Nationwide Class and, alternatively, the Subclasses)

83.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

84.     Defendant is a merchant engaging in the sale of goods to Plaintiff and the Classes.

85.     There was a sale of goods from Defendant to Plaintiff and the Classes.

86.     As the developer, manufacturer, marketer, distributor, and/or seller of the defective Products, Defendant impliedly warranted to Plaintiff and the Classes that its Products were fit for their intended purpose in that they would be safe for Plaintiffs and the Classes to consume. Contrary to these representations and warranties, the Products were not fit for their ordinary consumption, and did not conform to Defendant's affirmations of fact and promises included with the packaging.

87.     The implied warranty of merchantability included with the sale of each Product means that Defendant guaranteed that the Products would be fit for the ordinary purposes for which eggs are consumed and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant, and Plaintiff and the Class Members.

88.     Defendant breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of providing reasonably safe for consumption eggs because

17

the Products have a risk of contaminating the consumer with Salmonella. Therefore, the Products are not fit for their particular purpose.

89.     Defendant breached the implied warranty in the contract for the sale of the Products by knowingly selling to Plaintiff and the Classes a product that Defendant knew would expose Plaintiff and the Classes to health risks, thus meaning Defendant knew that the Products were not fit for their intended consumption as safe to consume eggs.

90.     Defendant was on notice of this breach, as they were made aware of the adverse health effects caused by risk of Salmonella contamination that can result from the consumption of their Products.

91.     Plaintiff and the Classes did not receive the goods as bargained for because the goods they received were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

92.     Plaintiff and members of the Classes are the intended beneficiaries of Defendant's implied warranties.

93.     The Products were not altered by Plaintiff or the members of the Classes.

94.     Plaintiffs and members of the Classes consumed the Products in the ordinary way such eggs were intended to be consumed.

95.     The Products were defective when they left the exclusive control of Defendant.

96.     The Products were defectively designed and/or manufactured and unfit for their intended purpose as safe to consume eggs, and Plaintiffs and members of the Classes did not receive the goods that they bargained for.

97.     Plaintiff and members of the Classes purchased the Products that contained the Defect, which was undiscoverable by them at the time of purchase and at any time during the class

period.

98.     As a result of the defect in the Products, Plaintiff and members of the Classes have suffered damages including, but not limited to, the cost of the defective product, loss of use of the product and other related damage.

99.     Defendant breached the implied warranty of merchantability to the Plaintiff and Class members.

100.     Thus, Defendant's attempt to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void.

101.     Plaintiff and Class members have been damaged by Defendant's breach of the implied warranties.

102.     Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relied, as well as costs and attorneys' fees, available under law.

## COUNT V
### Fraudulent Concealment
### (On behalf of the Nationwide Class and, alternatively, the Subclasses)

103.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

104.     Defendant aimed to portray the Product as safe for frequent and repeated consumption and omitted key facts concerning the potential harm from contamination due to Salmonella.

105.     Defendant, acting through its representatives or agents, delivered the Product to its distributors and through other channels to consumers, including the Plaintiff and Class Members.

19

106. Defendant, as the owner, manufacturer, marketer, and seller of the Products, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the Products. Defendant owed Plaintiffs and Class Members a duty to disclose because the risks associated with Salmonella contaminated products were known and/or accessible exclusively to Defendant, who had superior knowledge of the facts; because the facts would be material to consumers; because the Defendant actively concealed or understated them; because the Defendant intended for consumers to rely on the omissions in question; and because Defendant made partial representations concerning the same subject matter as the omitted facts. Furthermore, because the Product poses an unreasonable risk of substantial bodily injury, Defendant was under a continuous duty to disclose that the Products contained a bacteria known to have adverse health effects.

107. Defendant willfully and knowingly omitted material information regarding the quality and safety of the Products as discussed herein. Defendant countenanced these material omissions to boost or maintain sales of the Product, and to create a false assurance that prolonged loyalty to Defendant's brand—the continued consumption of the Product—would not place consumers in danger. The omitted information and partial representations were material to consumers because they play a significant role in determining the value of the Product at the time of purchase.

108. During this time, Plaintiffs, and members of the Classes, were using the Products without knowing the Products could contaminate them due to the Salmonella bacteria found in them.

109. Defendant failed to discharge its duty to disclose these materials facts.

110. Although Defendant had a duty to ensure the accuracy of the information regarding the Products because such information was within the exclusive knowledge of Defendant and because the information pertains to serious health issues, Defendant failed to satisfy its duty.

111. Defendant engaged in fraudulent and deceptive conduct by devising and executing a scheme to deceptively convey that their products were safe. Defendant's actions were done to gain a commercial advantage over competitors, and to drive consumers, like the Plaintiffs and Class Members, away from purchasing a competitor's product.

112. Plaintiff and the Classes reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective Products manufactured and sold by Defendant had they known they possessed this risk of contamination due to Salmonella.

113. As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiff, and the Classes, suffered damages in the amount of monies paid for the defective Products.

114. Plaintiff and the Class Members have suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiff and the Class Members paid for the Product, awards medical monitoring expenses, costs, interest and attorneys' fees.

**COUNT VI**
**Strict Liability- Failure to Warn**
**(On behalf of the Nationwide Class and, alternatively, the Subclasses)**

115. Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

116. Defendant had a duty to warn Plaintiff and the Class members regarding the Defect, that being risk of contamination due to Salmonella, with the Products.

21

117. Defendant, which is engaged in the business of selling, manufacturing and supplying the Products placed them into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the Products.

118. The Products supplied to Plaintiff and Class Members was defective in design and formulation and unreasonably dangerous when they left the hands of Defendant and they reached the consumer of the Products, including Plaintiff and Class Members, without substantial alteration in the condition in which they were sold.

119. Defendant was in a superior position to know of the Defect, yet as outlined above, chose to do nothing when the defect became known to them.

120. Defendant failed to provide adequate warnings regarding the risks of the Products after knowledge of the Defect was known only to them.

121. Defendant had information regarding the true risks but failed to warn Plaintiff and members of the Classes to strengthen their warnings.

122. Despite their knowledge of the Defect and obligation to unilaterally strengthen the warnings, Defendant instead chose to actively conceal this knowledge from the public.

123. Plaintiff and members of the Classes would not have purchased, chosen, and/or paid for all or part of the Products if they knew of the Defect and the risks of purchasing the Products.

124. This Defect proximately caused Plaintiff and Class members' damages.

125. The Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VII
### Strict Liability- Design and Formulation Defect
### (On behalf of the Nationwide Class and, alternatively, the Subclasses)

126.    Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

127.    The design and formulation of the Products was defective and unreasonably dangerous.

128.    The risk of bacterial contamination contained within the Products creates unreasonable danger.

129.    The design and formulation of the Products rendered them not reasonably fit, suitable, or safe for their intended purpose.

130.    The risk of bacterial contamination contained within the Products outweighed the benefits and rendered the Products unreasonably dangerous.

131.    Defendant's Products were defective because the design and formulation of the Products included Salmonella. After Defendant knew or should have known of the risk of injury from the Salmonella found in the Products, Defendant continued to promote the Products as safe and effective to the Plaintiffs, Class Members, and public.

132.    There are other eggs that do not pose the risk of contamination due to Salmonella, meaning that there were other means of production available to Defendant.

133.    The Products were unreasonably unsafe, and the Products should not have been sold in the market.

134.    The Products did not perform as an ordinary consumer would expect.

135.    The Defendant's negligent design/formulation of the Products was the proximate cause of damages to the Plaintiff and the Class members.

136.     Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## COUNT VIII
### Negligent Failure to Warn
### (On behalf of the Nationwide Class and, alternatively, the Subclasses)

137.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

138.     Defendant owed Plaintiff and Class members a duty of care and to warn of any risks associated with the Products.

139.     Defendant knew or should have known of the defect but failed to warn Plaintiff and members of the Classes.

140.     Plaintiff had no way of knowing of the Products' latent defect.

141.     Defendant's failure to warn caused Plaintiffs and Class members economic damages and injuries in the form of lost value due to risk of contamination due to Salmonella exposure.

142.     Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## COUNT IX
### Negligent Design & Formulation Defect
### (On behalf of the Nationwide Class and, alternatively, the Subclasses)

143.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

144.     Defendant owed Plaintiff and the Classes a duty to design and formulate the

24

Products in a reasonable manner.

145. The design and formulation of the Products was defective and unreasonably dangerous, causing exposure to a material with harmful effects. Thus, the Products are now worthless.

146. The design and formulation of the Products caused them to be not fit, suitable, or safe for their intended purpose. The dangers of the Products outweighed the benefits and rendered the products unreasonably dangerous.

147. There are other eggs that do not contaminate the consumers with Salmonella.

148. The risk/benefit profile of the Products was unreasonable, and the Products should have had stronger and clearer warnings or should not have been sold in the market.

149. The Defendant's negligent design/formulation of the Products was the proximate cause of damages to the Plaintiff and the Class members.

150. Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## COUNT X
### Negligence
### (On behalf of the Nationwide Class and, alternatively, the Subclasses)

151. Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

152. Defendant owed a duty to consumers to produce a product that was safe for its intended consumption.

153. Defendant breached this duty by producing a product that was dangerous for its intended consumption. Defendant knew or should have known that Salmonella contaminated eggs

would cause injuries once exposed to humans and thus be worthless as safe-to-consume Products.

154.    As a direct result of this breach, Plaintiff suffered injury in that Plaintiff has been deprived of their benefit of the bargain. Plaintiff's injuries were caused in fact by Defendant's breach. But for Defendant's negligent manufacture and improper oversight, Plaintiff would not have been injured.

155.    Further, Plaintiff's injuries were proximately caused by Defendant's breach. It is foreseeable that poorly designed and formulated eggs containing Salmonella would cause injury, and it is foreseeable that a user would lose their benefit of the bargain if they purchased dangerous Products.

156.    Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes, alleged herein, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

a.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative for the Classes and Plaintiff's attorney as Class Counsel;

b.    For an order declaring the Defendant's conduct violates the causes of action referenced herein;

c.    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

26

d.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pleaded or as the Court may deem proper; and

h.  For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

i.  Such other relief as this Court deems just and proper.

j.  Plaintiff hereby demands a trial by jury.

Dated: October 31, 2024

Respectfully submitted,

 /s/ Daniel P. Bach
Attorney Daniel P. Bach
WI State Bar #1005751

**LAWTON CATES, S.C**
146 E. Milwaukee Street, Suite 120
Jefferson, WI 53549
Tel: (920) 674-4567
dbach@lawtoncates.com

 /s/ Paul J. Doolittle, Esq.
*(Pro Hac Vice Forthcoming)*
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street Charleston, SC 29403
Tel: (803) 222-2222
Email: pauldoolittle@poulinwilley.com
         cmad@poulinwilley.com

*Attorneys for Plaintiffs*

27