UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOEL ABDULLAH,

    **Plaintiff,**

v.                                            Case No. 24-CV-1400

MILO'S POULTRY FARMS, LLC,

    **Defendant.**

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

### 1. Background

Joel Abdullah brought this purported class action against Milo's Poultry Farms, LLC,[1] after Milo's initiated a voluntary recall of its raw egg products. (ECF No. 1.) Milo's "operates the production of multiple poultry related brands" including Milo's Poultry Farm and Tony's Fresh Market. (ECF No. 1, ¶ 19.) "These two brands are both found in the northern Midwest region of the United States." (ECF No. 1, ¶ 19.) Nonetheless, Abdullah, a citizen of South Carolina, alleges that he bought

---

[1] Although the plaintiff alleges that complete diversity exists (ECF No. 1, ¶ 21), he has failed to adequately allege the citizenship of Milo's. Rather, the plaintiff alleges, "Defendant Milo's Poultry Farm, LLC is incorporated, and its principal place of business is Bonduel, Wisconsin." (ECF No. 1, ¶ 19.) Aside from the fact that saying that an LLC is "incorporated" is a contradiction, the citizenship of an LLC is determined by the citizenship of its members. *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534-35 (7th Cir. 2007). For its part, Milo's failed to comply with Federal Rule of Civil Procedure 7.1(a)(2) and provide "name—and identify the citizenship of—every individual or entity whose citizenship is attributed to that party." (*See* ECF No. 8.) Ordinarily, the court would not take any action in a diversity case without first determining that complete diversity exists, but because the present motion challenges the court's jurisdiction on a different basis, the court may consider it.

Milo's eggs in South Carolina on September 2, 2024, "for personal household consumption." (ECF No. 1, ¶ 26.)

On September 6, 2024, Milo's issued a voluntary recall due to potential salmonella contamination in its raw egg products. (ECF No. 1, ¶ 3.) In total, Milo's recalled 29,786 cartons and cases containing 406,488 raw shell eggs, worth a total dollar value of $92,709.33. (ECF No. 16, ¶ 9.) Milo's offered refunds to all customers who purchased eggs subject to the recall. (ECF No. 16, ¶ 11.) Products associated with the recall allegedly sickened 65 people in nine states, 24 of whom were hospitalized. (ECF No. 1, ¶ 32.) There were no reported illnesses in South Carolina. (ECF No. 1, ¶ 33.))

Abdullah alleges that the eggs he purchased were contaminated with salmonella. (ECF No. 1, ¶ 11.) He does not, however, allege that he consumed the eggs and became ill. Instead, he rests his argument on, and seeks monetary and equitable relief for, purely economic injuries allegedly suffered. (ECF No. 1, ¶ 43.)

Pending before the court is Abdullah's motion to appoint interim class counsel pursuant to Fed. R. Civ. P. 23(g). (ECF No. 12.) Also before the court is Milo's motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (ECF No. 14.) For the reasons set forth below, the court will grant Milo's motion to dismiss for lack of subject matter jurisdiction.

### 2. Motion to Dismiss Standard

"Under Rule 12(b)(1), 'the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter.'" *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691 (7th Cir. 2015) (quoting *Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004)). The plaintiff, as the proponent of federal jurisdiction, has the burden of proof. *Id*. Unlike a motion to dismiss under Rule 12(b)(6), the court may consider matters outside the pleadings when assessing its jurisdiction. *See Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020) (citing *Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1316 (2017); *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019)).

### 3. Amount in Controversy

The Class Action Fairness Act of 2005 (CAFA) expanded federal court's jurisdiction over interstate class actions. One requirement for a federal court to have jurisdiction under CAFA is that the amount in controversy must exceed $5 million. 28 U.S.C. § 1332(d)(2).

The party asserting federal jurisdiction under CAFA bears the burden of demonstrating the amount in controversy has been met. *Roppo v. Travelers Commercial Insurance Co.,* 869 F.3d 568, 578 (7th Cir. 2017). The amount in controversy is the dollar amount the parties are fighting over; it is not the amount

3
Case 1:24-cv-01400-BBC    Filed 06/03/25    Page 3 of 7    Document 22

### 2. Motion to Dismiss Standard

"Under Rule 12(b)(1), 'the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter.'" *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691 (7th Cir. 2015) (quoting *Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004)). The plaintiff, as the proponent of federal jurisdiction, has the burden of proof. *Id*. Unlike a motion to dismiss under Rule 12(b)(6), the court may consider matters outside the pleadings when assessing its jurisdiction. *See Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020) (citing *Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1316 (2017); *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019)).

### 3. Amount in Controversy

The Class Action Fairness Act of 2005 (CAFA) expanded federal court's jurisdiction over interstate class actions. One requirement for a federal court to have jurisdiction under CAFA is that the amount in controversy must exceed $5 million. 28 U.S.C. § 1332(d)(2).

The party asserting federal jurisdiction under CAFA bears the burden of demonstrating the amount in controversy has been met. *Roppo v. Travelers Commercial Insurance Co.,* 869 F.3d 568, 578 (7th Cir. 2017). The amount in controversy is the dollar amount the parties are fighting over; it is not the amount

3
Case 1:24-cv-01400-BBC    Filed 06/03/25    Page 3 of 7    Document 22

that the plaintiff is likely to recover. *Schutte v. Ciox Health, LLC*, 28 F.4th 850, 856 (7th Cir. 2022).

The proponent must provide a "good-faith estimate" that is "plausible and adequately supported by the evidence." *Schutte*, 28 F.4th at 854 (*citing Blomberg v. Service Corp. International*, 639 F.3d 761, 763 (7th Cir. 2011)). Supporting evidence includes the complaint's allegations, informal estimates, affidavits from employees or experts, or other sources. *Id.* (citing *Roppo*, 869 F.3d at 579–80). However, if an opponent can demonstrate that it is legally impossible that the claim will surpass the $5 million threshold, the claim does not belong in federal court. *See Back Drs. Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) (*citing St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938)).

Abdullah has not met his burden of plausibly alleging an amount in controversy exceeding $5 million. Abdullah's substantive response is terse. Aside from setting forth the applicable law and the defendant's argument, he argues merely that "non-monetary relief should be considered in the jurisdictional analysis." (ECF No. 19 at 5.) He has failed to offer the requisite good faith estimate of the value of the relief sought. He makes no attempt articulate what that non-monetary relief may be, much less its value. (ECF No. 19 at 18.) He relies purely on conclusory statements – introducing no affidavits, informal estimates, or other supporting evidence – to justify an amount in controversy in excess of $5 million.

Abdullah's alleged injury is simply having purchased eggs of diminished value because they may have been contaminated with salmonella, which Milo's contends is

4

Case 1:24-cv-01400-BBC    Filed 06/03/25    Page 4 of 7    Document 22

a specious injury. *See generally*, *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525 (7th Cir. 2024).

Granted, Abdullah alleges in his complaint that some purchasers of the recalled eggs became ill, and a few were even hospitalized. However, Abdullah does not argue that the value of those claims must be considered, nor does he suggest a value of those claims.

Moreover, those claims would appear atypical of the claims that Abdullah seeks to represent. *Cf.* Fed. R. Civ. P. 23(a)(3); *Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2017 U.S. Dist. LEXIS 67555, at *28 (N.D. Ill. May 3, 2017). It is not merely that persons who became ill sustained different damages. Rather, damages for illness would arise only from claims distinct from the claims for purely economic injuries that Abdullah presents. As a result, Abdullah's claims are not typical of physical injury claims that may give rise to greater individual damages. *Cf. Block v. Abbott Labs.*, No. 99 C 7457, 2002 U.S. Dist. LEXIS 5453, at *9 (N.D. Ill. Mar. 28, 2002) ("However, 'if proof of [plaintiff's] claims would not necessarily prove all of the proposed class members' claims,' she fails the typicality prong of Rule 23(a)." (quoting *Williams v. Ford Motor Co.*, 192 F.R.D. 580, 586 (N.D. Ill. 2000))). In other words, Abdullah does not purport to be representative of persons alleging physical injuries, and absent an appropriate representative plaintiff, the court cannot aggregate those potential injuries to assess whether the $5 million threshold has been surpassed.

There is no possibility of a further recall. *Cf. Aliano v. Ferriss*, No. 11 C 1421, 2011 U.S. Dist. LEXIS 58805, at *8 (N.D. Ill. June 1, 2011) (discussing the cost to

recall the subject products vis-à-vis the amount in controversy). Not only did Milo's already recall the eggs, but as highly perishable commodity, no consumer is likely to still possess any subject eggs.

Even considering Abdullah's demand for punitive damages, *see Roppo*, 869 F.3d at 582, there is no plausible way that a claim involving less than $100,000 worth of eggs could result in punitive damages of more than $4.9 million, *see State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("Our jurisprudence and the principles it has now established demonstrate … that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.").

Finally, Abdullah does not argue that, barring the aggregate $5 million amount in controversy required under CAFA, the court nonetheless has subject matter jurisdiction over Abdullah's individual complaint. *See* 28 U.S.C. § 1332(a). For the sake of completeness, the court notes that it is likewise legally impossible for Abdullah's claim for the value of the eggs he purchased to exceed $75,000. He does not allege how many eggs he purchased "for personal household consumption" (ECF No. 1, ¶ 26) but he would have had to purchase nearly all the recalled eggs for his claim to plausibly exceed $75,000.

4. Conclusion

Any inference that the amount in controversy here exceeds $5 million is entirely speculative. *See Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 733 (7th Cir. 2021). Alleging an amount in controversy without specific factual allegations or

assertions does not confer federal jurisdiction under CAFA. *Id.*; *see also Dancel v. Groupon, Inc.,* 940 F.3d 381, 385 (7th Cir. 2019) (conclusory invocation of CAFA is insufficient to establish subject-matter jurisdiction without specific factual allegations). Because Abdullah has failed to plausibly allege an amount in controversy in excess of $5 million, Milo's motion to dismiss (ECF 14) is GRANTED. Abdullah's motion to appoint interim class counsel (ECF 12) is DISMISSED AS MOOT. The Clerk shall enter judgment accordingly.

SO ORDERED.

Dated at Green Bay, Wisconsin this 3rd day of June, 2025.

*s/ Byron B. Conway*
BYRON B. CONWAY
United States District Judge